**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ILLINOIS STATE RIFLE ASSOCIATION and STEVEN THOMAS,<br><br>  Plaintiffs,<br><br>v.<br><br>HIRAM GRAU, in his official capacity as Director of the Illinois Department of State Police, SERGIO ACOSTA, in his official capacity as Member of the Concealed Carry Licensing Review Board, ROBINZINA BRYANT, in her official capacity as Member of the Concealed Carry Licensing Review Board, JAMES CAVANAUGH, in his official capacity as Member of the Concealed Carry Licensing Review Board, VIRGINIA WRIGHT, in her official capacity as Member of the Concealed Carry Licensing Review Board, JOHN CHESLEY, in his official capacity as Member of the Concealed Carry Licensing Review Board, JOHN DIWIK, in his official capacity as Member of the Concealed Carry Licensing Review Board, and G. PATRICK MURPHY, in his official capacity as Member of the Concealed Carry Licensing Review Board,<br><br>  Defendants. | Filed: April 28, 2014<br><br>Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs ILLINOIS STATE RIFLE ASSOCIATION ("ISRA") and STEVEN

THOMAS, by and through their attorneys, for their complaint against Defendants HIRAM

GRAU, SERGIO ACOSTA, ROBINZINA BRYANT, JAMES CAVANAUGH, VIRGINIA

WRIGHT, JOHN CHESLEY, JOHN DIWIK, and G. PATRICK MURPHY, state as follows:

1

# I.
# INTRODUCTION

1. This is an action to vindicate the United States Constitution's guarantee that no person shall be deprived of liberty without due process of law.

2. When the Illinois General Assembly passed the Firearm Concealed Carry Act (the "Act") in July 2013, it sought to safeguard the right to carry firearms in public for self-defense—a fundamental constitutional right that has played an important role in the traditions and history of our Nation and that is of immense practical importance to tens of thousands of Illinois residents who wish to carry firearms for their personal safety. The Act specifies that State officials "shall issue" a license to anyone who meets specified criteria. One of these criteria is that the applicant must not be found to "pose a danger to himself, herself, or others, or a threat to public safety."

3. Law enforcement agencies and the Illinois Department of State Police (the "Department") are given the authority to object to an application for a concealed carry license ("CCL") in certain circumstances. Such objections and any information they deem relevant is placed before the Concealed Carry Licensing Review Board (the "Board"), which is entrusted with making the determination whether an applicant poses a danger to himself, herself or others or a threat to public safety.

4. The Act authorizes the Board to request information and accept testimony from applicants, but the Board has failed to do so before denying numerous applications. Together with the Act's provision for judicial review, the Board's current procedures result in applicants having no opportunity at any stage to submit evidence concerning whether they pose a danger to

themselves or others. The result is an incomplete and one-sided presentation of the evidence that invites erroneous deprivations of the fundamental liberty interest the Act secures.

5. The United States Constitution requires more. Notice and a meaningful opportunity to be heard are the most fundamental requirements of due process, and every applicant is entitled to make his case at some time in some way before someone with the power to grant his application. Defendants could provide such procedures with little trouble or expense, and doing so would greatly enhance the accuracy of their decisions.

6. Defendants' Star Chamber procedures are at odds with the Due Process Clause of the United States Constitution. Mr. Thomas and members of ISRA are victims of this unfair and skewed process. They have been stripped of their fundamental constitutional right to carry firearms in public without meaningful opportunity to demonstrate that they are entitled to concealed carry licenses.

## II.
## JURISDICTION AND VENUE

7. Jurisdiction is founded on 28 U.S. § 1331 in that this action arises under the Constitution and laws of the United States. This action seeks relief pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. §§ 1983 and 1988.

8. Venue is proper under 28 U.S.C. § 1391(b).

## III.
## PARTIES

9. Plaintiff Illinois State Rifle Association is a non-profit association incorporated under the laws of Illinois in 1913, with its principal place of business in Chatsworth, Illinois.

ISRA has members residing throughout the State of Illinois. The purposes of the ISRA include the protection of the right of citizens to bear arms for the lawful defense of their families, persons, and property, and to promote public safety and law and order. ISRA brings this action on behalf of itself and its members ("ISRA Members").

10. Plaintiff Steven Thomas is a resident of Buffalo Grove, Illinois, in the County of Cook.

11. Defendant Hiram Grau is the Director of the Illinois Department of State Police. The Department is an agency of the State of Illinois and administers the State's concealed carry licensing process. Its principal office is located in Sangamon County at 801 South 7th Street, Springfield, IL 62703.

12. The Concealed Carry Licensing Review Board is an independent state authority created by the Firearm Concealed Carry Act and housed within the Department. The Board consists of seven commissioners, with three residing within the First Judicial District of Illinois and one residing within each of the remaining Judicial Districts. 430 ILCS 66/20(a). Commissioners are permitted to attend Board meetings electronically. 430 ILCS 66/20(c).

13. Defendant Sergio Acosta is a Board commissioner and resides in DuPage County.

14. Defendants Robinzina Bryant, James Cavanaugh, and Virginia Wright are Board commissioners and reside in Cook County.

15. Defendant Patrick John Chesley is a Board commissioner and resides in Sangamon County.

16. Defendant John Diwik is a Board commissioner and resides in Will County.

17. Defendant G. Patrick Murphy is a Board commissioner and resides in Williamson County.

18. All Defendants are being sued in their official capacities.

## IV.

## FACTUAL ALLEGATIONS

### ISRA Members and Mr. Thomas Apply for Licenses Under the Firearm Concealed Carry Act

19. The right to keep and bear arms is "the true palladium of liberty" and has long been understood to be essential to every citizen's right to self-defense. 1 ST. GEORGE TUCKER, BLACKSTONE'S COMMENTARIES, at App. 300 n.D part 6 (1803). Self-defense is the central component of the Second Amendment's right to keep and bear arms, and the need to use a firearm in self-defense "is as important outside the home as inside." *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012); *see also People v. Aguilar*, 2013 IL 112116. The right to bear arms for self-defense in public is accordingly a liberty interest of the first order that may not be taken away without due process of law.

20. To secure the benefits of the right to bear arms for self-defense in public, the Illinois General Assembly enacted the Firearm Concealed Carry Act, 430 ILCS 66/1 *et seq.* The Act mandates that qualifying private citizens be granted licenses to carry concealed firearms in public.

21. By requiring State officials to issue CCLs under specified circumstances, the Act codifies a liberty interest in the carrying of concealed firearms. Under the United States Constitution, Defendants may not deny that liberty without due process of law.

22. Law-abiding residents of Illinois who do not have a CCL issued under the Act are generally barred from carrying any type of loaded firearm in public in any manner. *See* 720 ILCS 5/24-1.6(a)(3)(A)-(A-5). Law-abiding residents of Illinois who meet the statute's requirements for a CCL but who are unable to secure one are thus stripped of their fundamental constitutional right to carry firearms. A denial of the right to bear arms constitutes irreparable harm. *See Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011).

23. The Act provides that the Department "shall issue a license to carry a concealed firearm" to any applicant who: (1) satisfies the qualifications of 430 ILCS 66/25; (2) has submitted a completed application and accompanying documentation; (3) has paid the requisite fees; and (4) "does not pose a danger to himself, herself, or others, or a threat to public safety as determined by the [Board]." 430 ILCS 66/10(a).

24. Mr. Thomas satisfied the first three of these requirements, and the only basis that has been identified as supporting the denial of his application is his alleged failure to satisfy the fourth.

25. Mr. Thomas submitted his CCL application on-line on January 12, 2014. (See attached Exhibit A.) Mr. Thomas submitted a completed application with all required documents. Mr. Thomas truthfully answered all of the "Criminal History Questions" in the negative.

26. Despite the Board's finding to the contrary, Mr. Thomas does not pose a danger to himself or others or a threat to public safety.

27. ISRA Members, including several living within Cook County, have likewise applied for and been denied CCLs on the sole ground of the Board's determination that they pose

6

a danger to themselves or others or a threat to public safety.

28. In sum, having satisfied the qualification requirements of 430 ILCS 66/25, submitted complete applications, and paid the necessary fees, Mr. Thomas and ISRA Members are entitled to CCLs under the Act unless they are deemed to "pose a danger to [themselves] or others, or a threat to public safety." 430 ILCS 66/10(a).

**Defendants Deny ISRA Members' and Mr. Thomas's Applications without Providing Notice or an Opportunity to be Heard**

29. Under 430 ILCS 66/15(a), any law enforcement agency may object to an application for a concealed carry license if it has a "reasonable suspicion that the applicant is a danger to himself or herself or others, or a threat to public safety." The Department may also object to an application if the applicant has a specified number of arrests entered into the Illinois Criminal History Records Information System within the preceding 7 years. *Id.* at 66/15(b).

30. An objection was lodged to Mr. Thomas's application. To date, Mr. Thomas has not been informed of the basis for the objection.

31. Under the Act, the effect of an objection is to refer the application to the Board for further consideration. *Id.* The Board must find the applicant ineligible for a license if it finds "by a preponderance of the evidence that the applicant poses a danger to himself or herself or others, or is a threat to public safety." 430 ILCS 66/20(g). Otherwise, it must find the applicant eligible.

32. The Department must deny an application if the Board finds the applicant to be ineligible. 430 ILCS 66/10(f).

33. When considering an objection to an application, the Board is limited to

considering "information submitted by the Department, a law enforcement agency, or the applicant." 430 ILCS 66/20(e). The Board is authorized to request additional information from the applicant and to conduct hearings at which it accepts testimony from the applicant. *Id.*

34. Although the Act allows the Board to request information or testimony from applicants, it did not make any such requests before ordering that Mr. Thomas's application be denied. Neither did the Board in any other way provide Mr. Thomas with an opportunity to address the basis for its concerns before finding that Mr. Thomas poses a danger to himself, others, or public safety. Indeed, at no time has the Board even informed Mr. Thomas of the basis of the objection to his application.

35. On information and belief, the Board's general policy is not to accord applicants notice or an opportunity to be heard before ordering that applications be denied.

36. Mr. Thomas was informed by letter that the Board had denied his applications.

37. Mr. Thomas received a letter from the Department dated March 19, 2014 indicating that a law enforcement objection had been submitted to his CCL application and that the Board shall issue a decision within 30 days of receipt of the objection. (See attached Exhibit B.) Mr. Thomas received a letter from the Department, also dated March 19, 2014, that his CCL application had been denied based on an objection to the Board from an unnamed law enforcement agency. (See attached Exhibit C.) It further indicates that "[t]he Board has notified the Department that it has been determined by a preponderance of the evidence that you pose a danger to yourself or others/are a threat to public safety." (*Id.*)

38. While the letters informed Mr. Thomas that he was denied by the Board, it does not provide any explanation for why the Board deemed Mr. Thomas a danger to himself, others,

8

or public safety.

39. ISRA Members, including several residing in Cook County, have likewise been denied their CCL by the Board without notice of the basis of the objections lodged against them, an opportunity to be heard concerning the objections, or an explanation of the reasons underlying the Board's decision.

40. The Act specifies that judicial review of the Board's decision to deny an application is available under the provisions of the Illinois Administrative Review Law. 430 ILCS 66/87(b). The Administrative Review Law "specifically limits judicial review to the administrative record," and courts thus "may not hear new or additional evidence in support of, or in opposition to, the decision of the administrative agency." *Marconi v. Chicago Heights Police Pension Bd.*, 870 N.E.2d 273, 292, 225 Ill.2d 497, 532 (2006); *see* 735 ILCS 5/3-110.

41. Together with the inadequate procedural protections provided by the Department and the Board, the limited judicial review available under the Administrative Review Law means that Mr. Thomas and ISRA Members denied CCLs by the Board are not allowed to present evidence at *any* stage to someone with authority to approve their licenses. Without the ability to present evidence, the limited post-deprivation opportunity to be heard before a court is largely meaningless.

42. Judicial review of the Board's decisions is further circumscribed by the deferential standard of review courts apply in Administrative Review Law cases: the Board's factual findings "will be reversed only if against the manifest weight of the evidence," and its resolution of mixed questions of law and fact may be overturned only if clearly erroneous, *Marconi*, 870 N.E.2d at 292-93, 225 Ill.2d at 532. *See also* 735 ILCS 5/3-110. Thus, the

9

procedures employed by the Board ensure that Mr. Thomas and ISRA Members denied by the Board will never be given the opportunity to present evidence to a decision maker with the power to make *de novo* findings of fact about whether they pose a danger to themselves, others, or public safety.

43. Defendants' failure to inform Mr. Thomas and ISRA Members denied by the Board of the factual basis for the Board's decision serves to further impede their rights. Without knowing why the Board denied their CCL applications, Mr. Thomas and ISRA Members are placed in the untenable position of deciding whether to incur the substantial legal costs and inconvenience of filing a lawsuit without any way of assessing the likelihood of success.

44. It is well within the Board's power to provide applicants with notice and an opportunity to be heard with respect to objections lodged by law enforcement agencies and the Department. Indeed, the Act expressly authorizes the Board to invite the applicant to submit evidence and testimony, strongly suggesting that the General Assembly contemplated that the Board would provide notice and an opportunity to be heard before denying applications. It cannot be said that procedures the General Assembly deemed appropriate are too burdensome to be used.

45. The inadequacy of the Board's procedures is underscored by the procedures provided to applicants whose eligibility for a CCL is determined by the Department rather than the Board. In particular, for denials other than those ordered by the Board the Act grants applicants the right to file an appeal for a hearing to the Director. 430 ILCS 66/87(a). Regulations promulgated by the Department provide for a first layer of review consisting of an informal review proceeding during which the applicant is entitled to be represented by counsel


and to present evidence. ILL. ADMIN. CODE tit. 20 § 1231.170(b) (2013). If the applicant is not successful in the informal review proceeding, he then may request a formal administrative hearing before an Administrative Law Judge governed by the Illinois Administrative Procedure Act. *Id*. § 1231.170(c). The Administrative Procedure Act, among other things, guarantees that "all parties shall be afforded an opportunity for a hearing after reasonable notice" and that "[a]n opportunity shall be afforded all parties to be represented by legal counsel and to respond and present evidence and argument." 5 ILCS 100/10-25. The Administrative Procedure Act "addresses procedural due process concerns in administrative hearings," *Bartlow v. Shannon*, 927 N.E.2d 88, 99, 399 Ill.App.3d 560, 572 (2010), and its provisions stand in stark contrast to the absolute lack of procedural protections provided to applicants before the Board.

46. In addition, in the context of someone who is denied a Firearm Owner's Identification Card because he "poses a clear and present danger to [himself], and other person or persons or the community," 430 ILCS 65/8(f), applicants are entitled to *de novo* judicial review of the unfavorable administrative decision, *id.* at 65/11(b). The fact that Illinois already provides such procedures to another class of individuals in a similar context highlights the deprivation of due process inflicted on Mr. Thomas, ISRA Members, and others who have been deemed ineligible for CCLs by the Board.

47. Providing a meaningful pre-deprivation opportunity to be heard would dramatically reduce the likelihood of an erroneous deprivation of Mr. Thomas's and ISRA Members' liberty. An applicant is uniquely well-situated to correct instances of mistaken identity or other confusion about his background that might otherwise lead to a wrongful denial. He is also certain to possess information that would provide helpful context for any evidence that

could be interpreted to suggest that he poses a danger to himself or others. In this context as in many others, notice of the factual basis for decision and a fair opportunity for rebuttal are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations.

48. The cost of according pre-deprivation notice and an opportunity to be heard would likely be offset in large measure by relieving the State of the cost of Administrative Review Law suits brought by applicants erroneously denied licenses.

## V.

### CLAIM FOR RELIEF
### COUNT I

**(U.S. Const. amend. XIV, 42 U.S.C. § 1983)**

49. The preceding paragraphs are incorporated herein.

50. In deciding what procedures the United States Constitution requires before the State may deprive someone of a liberty interest, a court must weigh three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

51. The right to carry firearms for self-defense is a fundamental right that this Nation has long honored and that is guaranteed by the Second Amendment to the United States Constitution. This right is of immense practical importance to many individuals who wish to carry firearms for their personal safety. It is therefore a cognizable liberty interest for purposes of the Due Process Clause.

52. Quite apart from the longstanding right to carry firearms for self-defense, the Act creates a liberty interest in obtaining a license to carry concealed firearms in public. The Constitution forbids Defendants to deprive anyone of that liberty interest without due process of law.

53. Defendants have failed to accord Mr. Thomas and ISRA Members a meaningful opportunity to be heard concerning whether they pose a danger to themselves, others, or public safety.

54. Defendants could provide such an opportunity with minimal cost and administrative inconvenience. Doing so would greatly reduce the likelihood of an erroneous deprivation of Mr. Thomas's and ISRA Members' liberties.

55. Defendants' failure to provide Mr. Thomas and ISRA Members with a meaningful opportunity to be heard violates the Due Process Clause of the United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an order and judgment:

a. Declaring, pursuant to 28 U.S.C. § 2201, that the procedures currently used by Defendants for evaluating concealed carry license applications fail to accord Mr. Thomas and ISRA Members a meaningful opportunity to be heard and therefore violate the Due Process Clause of the United States Constitution and are unlawful;

b. Vacating and setting aside the denial of Mr. Thomas's and ISRA Members' CCL applications;

  c.  Ordering Defendants to reconsider Mr. Thomas's and ISRA Members' CCL applications in a manner that comports with the Due Process Clause of the Illinois Constitution;

  d.  Enjoining Defendants, and their officers, employees, and agents from denying CCL applications without first providing applicants with notice and a meaningful opportunity to be heard;

  e.  Awarding Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and,

  f.  Granting such other and further relief as this Court deems just and proper.

Dated: April 28, 2014         Respectfully submitted,

                s/ William N. Howard

| | |
|---|---|
| Charles J. Cooper* | William N. Howard |
| David H. Thompson* | Keith L. Gibson |
| Peter A. Patterson* | LOCKE LORD LLP |
| COOPER & KIRK, PLLC | 111 South Wacker Drive |
| 1523 New Hampshire Avenue, N.W. | Chicago, Illinois 60606 |
| Washington, D.C. 20036 | (312) 443-0333 |
| (202) 220-9600 | whoward@lockelord.com |
| ccooper@cooperkirk.com | |
| *Pro hac vice application forthcoming | |

*Attorneys for Plaintiffs*

14