**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ILLINOIS STATE RIFLE ASSOCIATION, et al., | ) | |
| | ) | No. 14-3064 |
| Plaintiffs, | ) | |
| | ) | JUDGE LEFKOW |
| v. | ) | |
| | ) | |
| HIRAM GRAU, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)**

Defendants, by their attorney Lisa Madigan, the Illinois Attorney General, move this court to dismiss Plaintiffs' claim pursuant to Rule 12(b)(1). In support, Defendants state as follows:

## BACKGROUND

### I. Illinois's Firearm Concealed Carry Act

The Seventh Circuit in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2013), held that Illinois's ban on concealed carry was unconstitutional. The Court stayed its judgment for a period, allowing the State an opportunity to "craft a new gun law that will impose reasonable limitations, consistent with the public safety and the Second Amendment." *Id.* at 942. The Illinois General Assembly did so by enacting the Firearm Concealed Carry Act ("Act"), 430 ILCS 66/1, *et seq.*—a law that Plaintiffs do not challenge facially.

Under the Act, the Illinois Department of State Police ("ISP") "shall issue a license to carry a concealed firearm" if the applicant satisfies four criteria: (1) meets the criteria of section

25 of the Act; (2) has provided the application and documentation as required in section 30 of the Act; (3) has submitted the requisite fees; and (4) does not pose a danger to himself, herself, or others, or a threat to the public safety as determined by the Concealed Carry Licensing Review Board in accordance with section 20 of the Act. 430 ILCS 66/10(a). Prongs 1-3 above are not at issue; only prong four has any relevance to this case.

When an applicant applies for a concealed carry license, his or her information is entered into a database maintained by ISP, which local law enforcement agencies can access. 430 ILCS 66/10(i). "Any law enforcement agency may submit an objection to a license applicant based upon a reasonable suspicion that the applicant is a danger to himself or herself or others, or a threat to public safety." 430 ILCS 66/15(a).

The Act also creates a new board within ISP known as the Concealed Carry Licensing Review Board ("Board") (having 7 commissioners). 430 ILCS 66/20(a). If a law enforcement agency objects to an application based on danger or threat to the public safety, that objection is presented to the Board, which considers the application. *Id.* Relevant here, "[i]n considering an objection of a law enforcement agency or [ISP], the Board shall review the materials received with the objection from the law enforcement agency or [ISP]." 430 ILCS 66/20(e). "By a vote of at least 4 commissioners, the Board may request additional information from the law enforcement agency, [ISP], or the applicant, or the testimony of the law enforcement agency, [ISP], or the applicant." *Id.* The Board also may require that the applicant submit fingerprints for an updated background check if the Board determines it lacks information sufficient to determine eligibility. *Id.* In any event, in considering an application where a law enforcement agency has objected on concerns of danger or safety, "[t]he Board may only consider information submitted by [ISP], a law enforcement agency, or the applicant." *Id.*

After considering the evidence, the Board shall issue a decision within 30 days of the receipt of the law enforcement agency's objection, 430 ILCS 66/20(e), unless additional time is requested and granted under section (f) of the Act, 430 ILCS 66/20(f). If the Board determines by a preponderance of the evidence that the applicant poses a danger to himself or herself or others, or is a threat to public safety, the Board shall notify ISP that the applicant is ineligible for a concealed carry license. *Id.* ISP must then deny the applicant the license. 430 ILCS 66/10(f). An aggrieved applicant may challenge the Board's decision in state court pursuant to the Illinois Administrative Review Law. 430 ILCS 66/87(b).

## II.     The Board's Denial Of Steven Thomas's Application

Plaintiff Steven Thomas filed an application for a concealed carry license on January 12, 2014. (Doc. 1,, Cmplt, ¶25). He allegedly satisfied the first three requirements of section 10(a) of the Act. (*Id.* at ¶24). But a law enforcement agency objected to his application. (Doc. 1-2, Ex. B). Plaintiff claims that the Board did not request additional information from him or elicit his testimony, or otherwise provide him with notice of the objection or an opportunity to contest it. (Doc. 1, ¶34).

The Board timely issued its decision on March 19, 2014, stating that "[t]he Board has notified [ISP] that it has been determined by a preponderance of the evidence that you pose a danger to yourself or others/are a threat to public safety." (Doc. 1-3, Ex. C). The Board's decision advised Thomas of his right to appeal. (*Id.*).

Thomas has filed an administrative review action in state court challenging the Board's decision, which is concurrently being heard in the Circuit Court of Cook County, Case No. 14 CH 6237. (state court complaint attached hereto as Exhibit A). In that case, Thomas alleges that the Board has denied him due process under the state and federal constitutions. (Ex. A, ¶11).

**III. Plaintiffs' Claims**

Plaintiffs in this action are both Thomas—the denied applicant—and the Illinois Rifle Association. The Rifle Association purports to bring its claim on behalf of itself and its unidentified members. (Doc. 1, ¶9). Plaintiffs allege only one count, claiming that the Board has denied them due process under the federal and state constitutions. (*Id.* at ¶¶49-55). Specifically, Plaintiffs claim that, as matter of general policy, the Board does not "accord applicants notice or an opportunity to be heard before ordering that applications be denied." (*Id.* at ¶35). Plaintiffs claim that the alleged denial of a meaningful hearing (that is, Thomas was not allowed to present evidence to respond to the law enforcement objection) violates the Due Process Clause. (*Id.* at ¶¶41, 53). Plaintiffs further claim that the Board did not provide Thomas with any explanation for why it deemed him to pose a danger or threat to himself or others. (*Id.* at ¶38). Plaintiffs allege that, by not providing reasons for the denial, they are impeded from seeking effective judicial review under the State's Administrative Review Law. (*Id.* at ¶41-43).

Plaintiffs seek the following relief: (1) a declaration that the procedures used by the Board in denying Thomas's and the Rifle Association's members' applications are unconstitutional; (2) vacation of the Board's decision denying Thomas a concealed carry license; (3) an order that the Board reconsider Thomas's and the Rifle Association's unidentified members' concealed carry applications; and (4) an injunction against the Board from denying concealed carry applications without first providing applicants with notice of relevant objections and a meaningful hearing. (*Id.* at pp.13-14).

**STANDARD OF REVIEW**

This motion concerns principles of standing and abstention, both of which are jurisdictional defenses to be reviewed under Rule 12(b)(1). *Family Life Church v. City of Elgin*,

No. 07 CV 217, 2007 WL 2790763, *3 (Sept. 24, 2007 N.D. Ill.) (reviewing standing under Rule 12(b)(1)); *Manos v. Caira*, 162 F. Supp. 2d 979, 986 (N.D. Ill. 2001) (reviewing abstention defense under Rule 12(b)(1)). In reviewing a Rule 12(b)(1) motion, this Court may look beyond the complaint to other evidence submitted by the parties. *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 12010 (7th Cir. 1996). A plaintiff faced with a Rule 12(b)(1) motion bears the burden of satisfying the jurisdictional requirements. *Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

**ARGUMENT**

**I. The Rifle Association Lacks Standing.**

The Rifle Association lacks associational standing to bring its claim on behalf of unidentified members. Generally, a plaintiff cannot rest his claim or right to relief on the legal interests of a third party. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Nevertheless, the Supreme Court has held that an association may have standing to sue as a representative of its members if three elements are satisfied: (1) the interest it seeks to protect are germane to the organization's purpose; (2) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit; and (3) its members would otherwise have standing to sue in their own right. *Hunt v. Wash. Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). The Complaint falls short of adequately alleging the second and third elements of associational standing.

**A. The Rifle Association's Due Process Claim Requires Participation Of Individual Members.**

Associational standing is lacking because the Rifle Association cannot prove its due process claim on behalf of its members without the individual members' participation. The Rifle

Association's sole claim is an as-applied procedural due process challenge to the Board's procedures in reviewing the members' applications for concealed carry licenses. But procedural due process claims such as this one turn on highly fact-specific inquiries. *See Sonnleitner v. York*, 304 F.3d 704, 713 (7th Cir. 2002). For example, the nature of the law enforcement objections, the specific evidence presented to the Board, and the qualifications for concealed carry licenses possessed by the members are all highly fact-intensive issues that must be fleshed out for each particular member of the Rifle Association who may have been denied a concealed carry license. Without each member's participation, the due process issue cannot be adequately analyzed.

Moreover, the Act itself acknowledges that additional testimony or evidence from the applicant may not be necessary in some instances, making each case unique. *See* 430 ILCS 66/20(e) (stating Board *may* consider additional evidence from applicant if four out of seven commissioners make a request). Determining whether the Due Process Clause would compel additional evidence from the applicant is largely dependent upon the particulars of each individual case. *See Doe v. Heck*, 372 F.3d 492, 526 (7th Cir. 2003) (stating that procedural due process focuses on the "form of the procedures that the government must afford an individual" given the "particularities of the situation"). The point remains that without individualized inspection as to the process provided to each member of the Rifle Association who has been denied a concealed carry license, a procedural due process claim on their behalf cannot be fully considered. Accordingly, the Rifle Association's members' participation is integral to any due process claim. As such, proper associational standing is not present here. This Court therefore should dismiss with prejudice the due process claim brought by the Rifle Association on jurisdictional grounds.

### B. The Complaint Does Not Adequately Allege That The Rifle Association's Members Have Standing To Sue In Their Own Right.

Additionally, Plaintiffs have failed to adequately allege that the individual, unidentified members of the Rifle Association have standing to bring this suit in their own right. Only those with a valid Firearm Owner's Identification ("FOID") card at the time of application are eligible for a concealed carry license. 430 ILCS 66/25(2). A critical element of standing is that the plaintiff must show that there is a "but for" causal connection between the injury (here, the denial of a concealed carry license) and the challenged conduct (here, the Board's process in reviewing law enforcement objections to applications for concealed carry licenses). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992); *see Lossman v. Pekarske*, 707 F.2d 288, 291 (7th Cir. 1983) (holding due process claim failed where plaintiff failed to demonstrate but for causation between alleged denial of due process and injury). But Plaintiffs have not adequately alleged that the Rifle Association's individual members could satisfy the requisite causal connection, for there is no allegation that the unidentified members on whose behalf the Rifle Association brings the claim possessed valid FOID cards at the time of their applications for concealed carry licenses. And because the individual members would not have standing to sue without demonstrating that they possess a valid FOID card at the time of application, the Rifle Association lacks standing to sue on their behalf. *See Disablity Rights Wisc., Inc. v. Walworth County Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008) (affirming dismissal of association's claim on lack of associational standing where insufficient allegations regarding association's members' standing to sue).

## II. This Court Should Dismiss The Complaint Under *Colorado River* Abstention.

The claim brought by both Thomas and the Rifle Association also should be dismissed on the ground of abstention. In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-19 (1976), the Supreme Court held that, where concurrent state and federal actions are

"parallel," exceptional circumstances may warrant abstention from deciding the federal action. Here, a concurrent, on-going state court action challenging the Board's procedures in denying Thomas a concealed carry license are parallel to the due process claim at issue in this case. (Ex. A). Exceptional circumstances warrant abstention.

**A. This Federal Suit Is Parallel To Thomas's State Court Action**

The present action is parallel to Thomas's state court action (No. 14 CH 6237, Ex. A). To be parallel, "it is not necessary that there be formal symmetry between the two actions." *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004). Generally, a "suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Tyrer v. City of S. Beloit*, 456 F.3d 744, 752 (7th Cir. 2006) (internal quotation marks omitted); *see Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154. In deciding parallelness, this Court should consider whether the two suits involve substantially the same parties, arise out of the same facts, and raise similar factual and legal issues. *Id.*

Thomas filed a state court action nearly two weeks prior to filing this parallel federal action. (Ex. B). In it, he complains that the Board's process—which allegedly denied him notice of the law enforcement agency's objection to his application and an opportunity to be heard—violates due process under the Illinois and federal constitutions. (Ex. B, ¶11). The same claim is at issue here. (Doc. 1, ¶49-55). Moreover, the due process claims in both cases arises out of the same facts—that is, Thomas's application, the law enforcement agency's objection, the Board's process, and the ultimate denial of his application.

Finally, the factual and legal issues between the state and federal actions are the same. While Thomas claims that his state court action is limited to administrative review of the Board's decision under the Illinois Administrative Review Law (*id.* at ¶40), Illinois law also gives him the

right to challenge the Board's decision on constitutional grounds, such as alleged lack of procedural due process. *See Am. Nat'l Bank & Trust Co. v. City of Chicago*, 636 F. Supp. 374, 379 (N.D. Ill. 1986) ("Illinois law unquestionably gives parties the right to attack the constitutionality of administrative action and of ordinances in the judicial administrative-review process."). Thomas is raising the same factual and legal issues in the state court action. (Ex. B, ¶11). The two actions therefore are parallel for purposes of *Colorado River* abstention.

**B. Exceptional Circumstances Warrant Abstention.**

Abstaining from hearing Plaintiffs' claim and dismissing this lawsuit in light of the on-going state court litigation is warranted under *Colorado River*. Ten factors are to be considered in deciding whether exceptional circumstances exist to abstain: (1) whether the state has assumed jurisdiction over property; (2) inconvenience to the parties; (3) the need to avoid piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Tyrer*, 456 F.3d at 754. The first four are the primary factors. *Colorado River*, 424 U.S. at 818-19; *Tyrer*, 456 F.3d at 754.

Factors 1 and 2 are not applicable, for there is no property over which the state has assumed jurisdiction in this case and the convenience to the parties is in large measure the same in either forum. Factor three favors abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1156, 1560 (7th Cir. 1989) (internal quotation marks omitted). Substantially similar issues will be litigated in both this case and Thomas's state court

case. This allows a party to stall in one forum to ensure that the court most likely to rule in its favor acts first. This also presents the possibility that two forums will arrive at conflicting decisions. *See Tyrer*, 456 F.3d at 755-56 (citing *LaDuke*, 879 F.2d at 1560). And it matters not whether the claims in the different forums are presented in identical ways, for "the danger of piecemeal litigation does not turn on formal identity of issues but on concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority." *Tyrer*, 456 F.3d at756. Such concerns are present here.

Factor four cuts in favor of abstention (the state court action was filed first). (Ex. B); *see Interstate Material Corp. v. City of Chicago*, 847 F.3d 1285, 1289 (7th Cir. 1988) (finding it significant that party opposing abstention "filed both actions and chose to file in state court first"). The source of the governing law (fifth factor) in both the state and federal cases are both federal and state; Plaintiffs raise their claims under the Due Process Clauses of both the federal and state constitutions in both actions. (*Compare* Doc. 1, pp. 13-14, *with* Ex. B., ¶11).

The sixth factor counsels in favor of abstention. The state court can hear constitutional challenges even on administrative review, *Nat'l Bank & Trust Co.*, 636 F. Supp. at 379, and there is no reason to believe that the state court cannot protect Plaintiffs' state and federal rights, *see Tyrer*, 456 F.3d at 757 ("The insinuation that Illinois courts will not live up to the standard of full and fair adjudication of the [federal issues] is pure speculation that we expressly disavow.") (internal quotation marks omitted).

Factors seven and eight are neutral. Both the state and federal actions are relatively early in the proceedings without much litigation occurring in either forum thus far. And both forums—state and federal—possess jurisdiction over the issues in this case. Moreover, factor nine cuts in favor of abstention, since removal is no longer an option. *See* 28 U.S.C. §1446(b) (stating

that removal petition must be filed within 30 days of service of complaint and summons). Finally, factor ten is inapplicable because there is no reason to believe that Plaintiffs' federal action is vexatious or contrived.

As described above, the balance of the factors weighs in favor of abstention. Indeed, allowing Thomas's state and federal actions to proceed concurrently would waste the parties' resources and risk duplicative or contradictory rulings. *See Tryer*, 456 F.3d at 756-57. The issues in this case are predicated on the same set of facts and law as the state court action. In the end, there is no reason to doubt that Plaintiffs will be denied their opportunity to litigate fully and fairly their federal claim in the state court. Accordingly, this Court should abstain.

**Wherefore**, Defendants respectfully request that this Court enter an order dismissing the Rifle Association's claim due to lack of associational standing. Additionally, this Court should dismiss the entire Complaint under abstention principles announced in *Colorado River* to avoid duplicative litigation and needless waste of resources. Finally, Defendants request any further relief this Court deems just and proper.

LISA MADIGAN
Attorney General of Illinois

Respectfully submitted,

_____/s/ *Sunil Bhave* _____
Sunil Bhave
Assistant Attorney General
100 W. Randolph St., 13th Fl.
Chicago, IL 60601
(312) 814-4450

**CERTIFICATE OF SERVICE**

I, Sunil Bhave, hereby certify that I have caused true and correct copies of the above and foregoing Memorandum in Support of Motion to Dismiss to be sent via e-filing to all counsel of record on June 25, 2014, in accordance with the rules on electronic filing of documents.

______/s/ *Sunil Bhave*_______
SUNIL BHAVE
Assistant Attorney General